UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VICKY LYNN HARRIS,

     Plaintiff,                 Civil Action No. 18-11042

        v.                  District Judge Stephen J. Murphy
                                 Magistrate Judge R. Steven Whalen

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.
_____/

## **REPORT AND RECOMMENDATION**

Plaintiff Vicky Lynn Harris ("Plaintiff") brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner ("Defendant") denying her application for Supplemental Security Income ("SSI") and ("DIB") under the Social Security Act.  The parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  For the reasons discussed below, I recommend that Defendant's Motion for Summary Judgment [Docket #14] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #13] be DENIED.

## PROCEDURAL HISTORY

On July 14, 2014, Plaintiff applied for SSI, alleging disability as of December 31, 2013 (Tr. 12).  She later applied for DIB (Tr. 62-63).  Following an initial non-disability finding, Plaintiff requested an administrative hearing, held on September 14, 2016 in Oak Park, Michigan (Tr. 18).  Patricia S. McKay, Administrative Law Judge ("ALJ") presided.  Plaintiff, represented by attorney William Turkish,  testified (Tr. 25-39), as did Vocational Expert ("VE") Kelly A. Stroker (Tr. 39-43).  On December 28, 2016, ALJ McKay found Plaintiff not disabled (Tr. 63-77).  On March 12, 2018, the Appeals Council denied review (Tr. 1-3).  Plaintiff filed her complaint in this Court on March 30, 2018.

## BACKGROUND FACTS

Plaintiff, born July 25, 1963, was 53 when ALJ McKay issued her decision (Tr. 12, 77).  She left school after 11th grade and worked previously as a self-employed painter (Tr. 182).  She alleges disability as a result of schizophrenia, depression, anxiety, memory loss, and back, neck, and hip pain (Tr. 181).

### A.    Plaintiff's Testimony

Plaintiff offered the following testimony at the administrative hearing:

She lived in a single family home with a friend (Tr. 25).  She worked formerly painting signs for restaurants and billboards (Tr. 25).  The former work required her to stand for most of the work period and lift up to 40 pounds (Tr. 25).  In addition to the work as a painter, she worked as a pizza maker for six months in 2013 (Tr. 26).  She was right-handed

-2-

(Tr. 34).

At present, Plaintiff was unable to perform significant lifting due to left arm and back problems and arthritis of the hip (Tr. 26).  She experienced left arm problems since an injury at the age of 18 (Tr. 35).  She also experienced pain radiating into her right leg (Tr. 28).  She started using a cane for stability two months before the hearing (Tr. 27).  She currently took Tramadol, Norco, and muscle relaxers for the physical conditions (Tr. 28).  She had her back "crack[ed]" once a month (Tr. 36).   In addition to the physical conditions, Plaintiff experienced memory problems and was currently receiving psychiatric treatment (Tr. 29-31).  She took Zoloft and Risperdal for the conditions of bipolar disorder, depression, and schizophrenia (Tr. 29).  Zoloft caused the side effect of nausea and mild dizziness (Tr. 32).  She napped for an hour every day due to the medication side effect of tiredness (Tr. 33).  She underwent inpatient mental health treatment in the past but could not remember when (Tr. 38).

Plaintiff was unable to sit for more than 20 minutes, walk for more than a quarter block, or lift more than seven pounds on a rare basis (Tr. 30).  Due to the left arm problems, she experienced difficulty gripping (Tr. 31).  She had experienced right finger numbness for the past three years (Tr. 37).  She stopped riding a bike three months prior to the hearing because it had become too hard to pedal (Tr. 35).  Plaintiff drank no more than twice a month and seldom used marijuana (Tr. 31).  She relied on her housemate to clean, cook, and drive but she was able use a microwave oven (Tr. 32, 37).  She was able to perform self-care tasks

(Tr. 36).

Plaintiff testified that she was unable to work due to the inability to stand or sit for long periods; hip and leg pain; and numbness of the right hand (Tr. 38). In response to questioning by her attorney, she testified that she would be unable to stand or walk for six hours in an eight-hour workday (Tr. 39).

### B.   Medical Evidence

#### 1. Treating Sources

July, 2013 mental health counseling records note that Plaintiff was currently caring for her elderly mother (Tr. 413). September, 2013 counseling records note a normal affect and mood with full orientation (Tr. 423). The following month, Plaintiff reported once-weekly marijuana use (Tr. 408). Recommendations included walking, biking, swimming, and gardening (Tr. 406). Plaintiff exhibited a normal affect and speech (Tr. 397).

In December, 2013, Plaintiff related that her psychological problems stemmed from her bad romantic relationships (Tr. 390). Counseling records include a recommendation for "at least" monthly therapy sessions (Tr. 391).

Records by Craig Magnatta, M.D. indicate that April, 2014 imaging studies taken in response to Plaintiff's report of back pain showed mild degenerative changes of the cervical and lumbar spine (Tr. 249, 276-278). Bone density tests from the following month were normal (Tr. 271-272). July, 2014 imaging studies of the left elbow were negative (Tr. 268). The following month, Plaintiff reported ongoing back pain (Tr. 239). Mental health records

from the same month note diagnoses/conditions of schizoaffective disorder; cannabis and alcohol dependence; and economic, occupational, and personal problems (Tr. , 298, 315). Plaintiff denied hallucinations or depression and exhibited a normal affect and speech (Tr. 313). She denied medication side effects but reported that she continued to smoke daily (Tr. 295, 311). She exhibited a normal gait and reported normal concentration and energy (Tr. 294, 311). She indicated that she was currently in a healthy relationship and was confident in her ability to handle her financial affairs (Tr. 360, 362). In September, 2014, Plaintiff reported continued sleep disturbances due to body pain (Tr. 235). Dr. Magnatta's October, 2014 records note that Plaintiff was overusing Norco (Tr. 231).

Mental health treating records from the same month list a treatment goal of psychotropic medication compliance. Plaintiff was encouraged to continue treatment, exercise appropriately, maintain good sleep hygiene, and discontinue the use of alcohol and illicit substances (Tr. 291, 316). She reported only occasional alcohol use (Tr. 308). She reported that she was able to ride her bike to appointments but was not currently interested in seeking employment (Tr. 303-304). December, 2014 records note the prescribed medications of Risperdal and Zoloft (Tr. 316). Plaintiff exhibited a normal affect and mood with full orientation (Tr. 289). Dr. Magnatta's November, 2014 records note Plaintiff's claim of level "eight" out of ten back pain but note elsewhere that she had good control of pain symptoms (Tr. 550, 552). His December, 2014 records note abnormalities of the left elbow and wrist but an otherwise unremarkable examination (Tr. 547).

Dr. Magnatta's March, 2015 records note Plaintiff's report of tenderness of the spine (Tr. 539). The following month, Dr. Magnatta referred Plaintiff for physical therapy after she complained of weather-related back pain (Tr. 534-536). April, 2015 social work records note a normal appearance and affect (Tr. 503). Plaintiff reported that she was not interested in individual or group therapy (Tr. 496). In June, 2015, Plaintiff denied an offer of transitional housing after she was unable to pay her rent on a leased property (Tr. 494). She demonstrated normal concentrational abilities (Tr. 478). In July, 2015, she denied recent auditory hallucinations or paranoid thoughts (Tr. 474). She reported that she was medically "stable" (Tr. 460). The following month, Plaintiff reported muscle weakness after riding her bike and walking (Tr. 514). EMG studies of the lower extremities from the same month showed "mild" isolated membrane irritabilities but no electroymyographic abnormalities of the lower extremities or evidence of nerve root irritation (Tr. 623). An October, 2015 psychological evaluation was unremarkable (Tr. 445). The same month, she demonstrated tenderness of the left shoulder and left thoracic spine (Tr. 579). In December, 2015, Plaintiff complained of right like pain and numbness (Tr. 575).

In April, 2016, Plaintiff reported left shoulder and right hip pain (Tr. 563). The following month, Dr. Magnatta noted that Plaintiff's report of ongoing pain was not attributable to an injury (Tr. 559). He noted that good symptom control with treatment (Tr. 561). The following month, Plaintiff reported increased pain after forgetting to take her pain medication on vacation (Tr. 555).

June, 2016 case manager records note that Plaintiff was "not interested in employment and/or volunteer opportunities" or psychological counseling (Tr. 607, 613).   Plaintiff reported that she used marijuana on at least a weekly basis (Tr. 592).  The following month, she denied medication side effects (Tr. 589).   In July, 2016, Plaintiff reported difficulty turning her head but reported good results from manipulative techniques (Tr. 621).  The following month, Plaintiff requested a prescription for a cane (Tr. 615).

In September, 2016, Dr. Magnatta completed a work-related assessment on Plaintiff's behalf, stating she was limited to four hours of sitting and four hours of standing/walking in an eight-hour period (Tr. 624).  He found that Plaintiff would be required to rest for up to one hour each day due to low back pain (Tr. 624).  He limited her to carrying 10 pounds and found that she was unable to squat, crawl, or climb (Tr. 624).  He limited her to occasional bending and use of foot controls (Tr. 624).  He found that she was limited to occasionally manipulative activity except for frequent fine manipulation (Tr. 625).  He found that Plaintiff needed to rest 15 minutes of every hour (Tr. 625).  He stated that Plaintiff experienced the medication side effects of diminished concentration/drowsiness (Tr. 625).

## 2.  Non-Treating Sources

In March, 2015, Adam McKenzie, D.O. performed a one-time consultative orthopedic examination on behalf of the SSA, noting Plaintiff's report of left upper extremity due to a childhood injury and arthritis of the bilateral hips (Tr. 320).   She denied undergoing injections or surgery (Tr. 320).  She reported that she had stopped using a bike regularly (Tr.

320).  She reported only mild pain improvement with medication (Tr. 320).  She reported that she was able to carry with both hands but had difficulty with overhead reaching on the left (Tr. 320).

Dr. McKenzie observed a normal gait (Tr. 321).  Plaintiff demonstrated a loss of left elbow motion but normal grip strength and no limitation in fine manipulations (Tr. 321).  He observed that she "was able to tolerate all activities asked of her . . . without difficulty" (Tr. 322).

The same month, Blaine Pinaire, Ph.D performed a non-examining review of the treating and consultative records, determining that due to affective and substance abuse disorders, Plaintiff experienced mild restrictions in daily living and moderate difficulty in social functioning and concentration, persistence, or pace (Tr. 51).  Dr. Pinaire cited examination records noting good eye contact, a normal gait, a normal affect, and a cooperative attitude (Tr. 51).

### C.  Vocational Expert Testimony

*The ALJ found that none of Plaintiff's former work activity rose to the level of past relevant work* (Tr. 40).

ALJ McKay then posed the following question to the VE, describing an individual of Plaintiff's age, education, and lack of past relevant work with the following limitations:

[L]ight[1] exertional work . . . . She could only occasionally climb stairs, crouch

---

[1]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds

or crawl or kneel or stoop or bend.  She's not able to work near hazards which would be things like dangerous moving machinery or working at unprotected heights.  So she's not able to climb ladders or ropes or scaffolding.  With that left non-dominant upper extremity she can use it on a frequent basis for reaching forward.  I would say no overhead reaching.  With regard to her mental limitations she can only perform - - or she could perform work that's only simple, routine, or repetitive in nature; that requires only occasional interaction with co-workers, supervisors or the public and work that would be considered low stress and by low-stress work I mean it's a self-paced job. She's not working at a production rate or in team or tandem with her co-workers.   Since there's no past relevant work to consider, are there any unskilled jobs that exist that she could perform? (Tr. 40-41).

The VE testified that the above-stated limitations would allow for the light, unskilled work of an inspector (60,000 jobs in the national economy) and packager (60,000) (Tr. 41). She testified that if the hypothetical individual were also were limited to the occasional use of foot controls, or, limited to using the right hand for frequent (as opposed to *constant*) grasping or fingering, the job numbers would not change (Tr. 41).  She testified that if the individual were limited to occasional reaching with the left arm, the packager position would be eliminated (Tr. 41).  The VE stated that both the inspector and packager positions could be performed in either the sitting or standing position (Tr. 41-42).  She stated that the further

––––––––––––––––––––

at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

limitation of occasional fingering/fine manipulation in the upper right extremity would not change the original job numbers (Tr. 42). She testified that Plaintiff's allegations of severe back pain and a limited ability sit or stand, if fully credited, would direct a finding of disability (Tr. 43).

### D. The ALJ's Decision

Citing Plaintiff's medical records, ALJ McKay found the severe impairments of "degenerative disc disease of the lumbar and cervical spine, history of fracture of distal left ulna and proximal radius and extremity/elbow, schizoaffective disorder, polysubstance dependence (alcohol and cannabis)" but that none of the conditions met or medically equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 66-67). She found that the conditions of hypertension, idiopathic insomnia, allergic rhinitis, and tendinitis of the left shoulder were non-severe impairments (Tr. 66). The ALJ found that although the psychological conditions were not disabling, Plaintiff experienced moderate limitation in social functioning and concentration, persistence, or pace (Tr. 67).

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") for light work with the following additional limitations:

> [She] is limited to occasional climbing of stairs, crouching, crawling, kneeling, stooping/bending; must avoid workplace hazards such as dangerous, moving machinery and unprotected heights such that the claimant would be unable to climb ladders, ropes, and scaffolds; is limited to occasional forward reaching with the non-dominant left upper extremity; no overhead reaching with the non-dominant left upper extremity; is limited to low stress work, which is work that is self-paced and not a production rate, and which is not in team/tandem with co-workers; can have occasional contact with supervisors,

co-workers, and the general public; and is limited to simple, routine, repetitive work (Tr. 68-69).

Citing the VE's testimony, the ALJ found that Plaintiff could perform the light, unskilled job of inspector (Tr. 41, 76).

The ALJ discounted Plaintiff's allegations of disability, citing April, 2015 and August, 2016 treating records showing no gait abnormalities and normal reflexes (Tr. 70). The ALJ noted that the lower extremity studies were negative for lumbosacral radiculopathy or peripheral neuropathy (Tr. 70). She accorded "limited weight" to Dr. Magnatta's September, 2016 finding that Plaintiff would be required to take a work break 15 minutes every hour, noting that the treating opinion stood at odds with imaging studies showing only mild abnormalities and Dr. Magnatta's own records showing that Plaintiff received exclusively conservative treatment (Tr. 72).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way,

-11-

without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy."

-12-

*Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.  The Treating Physician Analysis

Plaintiff disputes the ALJ's conclusion that she was capable of exertionally light work (Tr. 68-69), contending, in effect, that the evidence supports the finding that she was capable of at most sedentary work.[2]  *Plaintiff's Brief*, 7-18, *Docket #13,* Pg ID 679.  She notes that Dr. Magnatta's September, 2016 treating opinion supports the conclusion that she was incapable of exertionally light work and argues that the ALJ's erred by according only "limited weight" to Dr. Magnatta's opinion.  *Id.*

Plaintiff is correct that for the period under consideration, the opinion of a treating physician which is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight."[3]  *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir.2009)(internal quotation marks omitted) (*citing Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir.2004)); 20 C.F.R. § 404.1527(c). However, in the

---

[2] Plaintiff, 53 at the time of administrative determination was categorized as an individual "closely approaching advanced age" (Tr. 75).  A finding that the she was capable of only unskilled, sedentary work would have directed a finding of disability.  20 C.F.R. part 404, subpart P, App. 2, Rule 201.14.

[3] For claims filed on or after March 17, 2017, the ALJs will weigh both treating *and* non-treating medical evaluations based on how well they are supported by the remainder of the record. 20 C.F.R. §§ 404.1520b; 416.920c.  Because Plaintiff applied for benefits well before that date, the current rule does not apply.

presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings, *see Warner v. Commissioner of Social Sec.*, 375 F.3d 387, 391-392 (6th Cir.2004), provided that he supplies "good reasons" for doing so. *Wilson*, at 547.

The ALJ's rationale for largely discounting Dr. Magnatti's September, 2016 opinion is well supported and explained. She noted that Dr. Magnatti's finding of disability level limitation was undermined by the fact that Plaintiff's treatment for the alleged body pain was exclusively conservative and that she had not been referred for orthopedic or neurologic evaluations (Tr. 72). The ALJ noted that the objective studies failed to show more than minor spine degeneration and that an EEG showed no nerve root impingement (Tr. 72). She cited the treating records showing a normal gait and normal clinical signs (Tr. 72). She noted that the disability opinion was undermined by "Dr. Magnatta's own recommendations" for walking and aerobic exercise found in the treating records (Tr. 72).

While Plaintiff notes that the EEG studies actually made "abnormal" findings, the cited studies show that the only "abnormalities" were "mild" isolated membrane irritabilities (Tr. 623). Other imaging studies show only mild degenerative changes of the cervical and lumbar spine, inconsistent with Dr. Magnatta's finding that Plaintiff's back problems precluded even sedentary work (Tr. 276-278,624). While Plaintiff contends that Dr. Magnatta's recommendation to walk and exercise referred only to home-based physical therapy, none of the treating records note a restriction on the ability to walk or exercise. Plaintiff's claim that she experienced severe physical restriction is also undermined by

-14-

mental health records noting a normal gait and unremarkable physical appearance.  (Tr. 294, 311, 406).  Dr. McKenzie's wholly unremarkable consultative findings also fail to support a finding of disability (Tr. 321-322).  Accordingly, the ALJ's well supported rejection of the treating opinion is not subject to remand.

Likewise, the Plaintiff's claim that the ALJ did not take into consideration all of the factors to be considered in rejecting a treating physician's opinion does not warrant a remand.  In explaining the reasons for giving less than controlling weight to a treating opinion, the ALJ must consider (1) "the length of the ... relationship" (2) "frequency of examination," (3) "nature and extent of the treatment," (4) the "supportability of the opinion," (5) "consistency ... with the record as a whole," and, (6) "the specialization of the treating source." *Wilson*, at 544; § 404.1527(c).  As to the first three factors, the ALJ noted that Dr. Magnatta's treatment predated the administrative opinion by over two-and-a-half years; Plaintiff sought treatment multiple times each year; and that under Dr. Magnatta's care, Plaintiff was prescribed pain medication, massage, exercise, ice/heat, and spinal manipulation (Tr. 70).  As to factors four and five, discussed above, the ALJ observed that Dr. Magnatta's September, 2016 disability opinion stood at odds with own treating records, the consultative findings, and the objective studies (Tr. 72).  Regarding the final factor, the ALJ noted that Dr. Magnatta (a family physician) had not referred Plaintiff or orthopedic or neurologic evaluation (Tr. 72).

For the these reasons, the ALJ's accord of limited weight to Dr. Magnatta's

assessment should remain undisturbed.

### B. The Supplemental Argument for Remand

Plaintiff also asks for a remand for a "constitutionally appointed" ALJ pursuant to the Supreme Court's June, 2018 decision in *Lucia et al. v. SEC*, —— U.S. ——, 138 S.Ct. 2044, 201 L.Ed.2d 464 (2018). *Docket #18* at 3, Pg ID 748.  Plaintiff excuses her failure to raise the issue in her original brief by noting that the supplemental argument is based an "'intervening change in controlling law.'" *Docket #18* at 4 (*citing Leisure Caviar, LLC v. U.S. Fish and Wildlife Service,* 616 F.3d 612, 615 (6ᵗʰ Cir. 2010)).

*Lucia* holds that ALJs of the Securities and Exchange Commission are "Officers of the United States" within the meaning of the Appointments Clause of the Constitution and must be appointed by the President, a court of law, or department head. *Id.*, 138 S.Ct. at 2051.[4] The Court held that Lucia raised a timely challenge to the constitutionality of the ALJ's appointment while the case was at the administrative level and was entitled to a remand for a hearing by a properly appointed ALJ. " '[O]ne who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case' is entitled to relief." *Id.* at 2055(*citing Ryder v. United States*, 515 U.S. 177, 182, 115 S.Ct. 2031, 132 L.Ed.2d 136 (1995)). On July 23, 2018, the Solicitor General released a

---

[4]

Article II § 2 of the Constitution states in relevant part that "Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments."

memorandum acknowledging that while *Lucia* addressed only the "constitutional status" of ALJs for the SEC, "'the Department of Justice understands the Court's reasoning...to encompass all ALJs in traditional and independent agencies who preside over adversarial administrative proceedings and possess the adjudicative powers highlighted by the *Lucia* majority.'" *Page v. Commissioner of Social Security*, 344 F.Supp.3d 902, 903 (E.D.Mich., 2018)(*citing July 23, 2018 memorandum*).  The memorandum states that going forward, "ALJs must be appointed (or have their prior appointments ratified) in a manner consistent with the Appointments Clause..." *Id*.

Under the statute at issue here, the "Commissioner of Social Security is permitted to 'assign duties, and delegate, or authorize successive redelegations of, authority to act and to render decisions, to such officers and employees of the Administration as the Commissioner may find necessary.'" *Davidson v. Commissioner of Social Security*, 2018 WL 4680327, at *2 (M.D.Tenn. September 28, 2018))(*citing* 42 U.S.C. § 902(a)(7))(holding that the plaintiff had waived her "as applied" claim under the Appointments Clause by failing to raise it at the administrative level). "The Social Security Administration may 'appoint as many administrative law judges as are necessary for proceedings required to be conducted....'" *Id.* (citing 5 U.S.C. § 3105).  Because "'[t]he Social Security Administration has not published a regulation or rule that governs how it appoints judges,'" the current case is properly characterized as an "as applied" challenge to the above-cited statutes. *Id.* (*citing Lucia*, 138 S.Ct. at 2058 (Thomas, J., concurring)).

-17-

In *Page, supra,* this Court denied the plaintiff's motion to amend her pleadings to argue that the ALJ deciding her case at the administrative level was unconstitutionally appointed pursuant to the Appointments Clause. 344 F.Supp.3d at 905. *Page* held that the plaintiff forfeited this argument by failing to challenge the validity of the ALJ's appointment in her prehearing brief, at the hearing, or before the Social Security Administration's Appeals Council. The Court observed that while the split in authority regarding the appointment of ALJs was acknowledged on December 27, 2016, the plaintiff had "failed to raise, much less develop the Appointments Clause issue at the administrative level although the [circuit] split in authority [was noted] long before the application for benefits was considered by the Appeals Council." *Id.* at 905, fn 4 (*citing Bandimere v. Securities and Exchange Commission,* 844 F.3d 1168 (10th Cir. 2016)).[5]

For the same reasons as in *Page*, Plaintiff's failure to raise her constitutional claim at the administrative level is fatal to her claim. Although the administrative opinion was issued only one day after the circuit split was noted, the Appeals Council did not deny review of the application until March 12, 2018 (Tr. 1). A Social Security regulation in effect long prior to the events in question states that claimants may receive an expedited appeals process

---

[5]

*Page* distinguishes *Jones Brothers v. Sec'y of Labor*, 898 F. 3d 669, 2018 WL 369059 (6th Cir. July 31, 2018), where the Sixth Circuit excused the forfeiture of the Appointments Clause argument at the administrative level where the plaintiff failed to "press" but nonetheless acknowledged the pre-*Lucia* circuit split regarding whether the appointment procedure for ALJs was constitutional as applied. *Id*. at 677.

to challenge a "provision in the law that you believe is unconstitutional." 20 C.F.R. §

404.924(d).  Although the language of the statute appears to refer to facial challenges to a

statute, regulation, or rule, it establishes, at a minimum, that the Appeals Council is able to

consider constitutional challenges.   Moreover, although Plaintiff's original summary

judgment motion was filed over one month after *Lucia*, it does not include argument that the

ALJ was unconstitutionally appointed.

In support of the contention that she is entitled to raise the Appointments Clause for

the first time in a supplemental brief during judicial review,  Plaintiff cites *Sims v. Apfel*, 530

U.S. 103, 108, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000), which holds that under the Social

Security Act the exhaustion of administrative remedies does not include "issue exhaustion."

*Fortin v. Commissioner of Social Security,* — F. Supp. 3d —, 2019 WL 1417161 (March 29,

2019)(Lawson, J.)(*citing Sims* at 108).   However, *Fortin* holds that the lack of an "issue

exhaustion" requirement in Social Security cases as stated in *Sims* (pertaining to evidentiary

disputes) could not be extended to Fortin's Appointments Clause challenge.   "[W]here the

challenge is to the structural integrity of the process . . . . [i]t only makes sense that such

challenges should be made 'before those very judges and prior to their action on his case,'"

*Fortin* at *4 (*citing Ryder,* 515 U.S. 177, 182, 115 S.Ct. 2031, 132 L.Ed. 2d 136 (1995))

"while the agency 'has opportunity for correction.'" *Id.* (*citing L.A. Tucker Truck Lines, Inc.*,

344 U.S. 33, 37, 73 S.Ct. 67, 97 L.Ed. 54 (1952); *see also Hutchins v. Berryhill*, 2019 WL

1353955, at *3 (E.D.Mich. March 26, 2019)(Cleland, J.)(declining to extent *Sim's* "limited

holding" to the Hutchins' failure to raise his Appointments Clause issue at any point during his administrative proceedings . . .").[6]   For the identical reasons, Plaintiff's reliance on a recently issued Social Security Ruling is unavailing.   SSR 19-1p, *Effect of the Decision in Lucia v. Securities and Exchange Commission ("SEC") On Cases Pending at the Appeals Council*, states as follows:

> The Appeals Council will grant the claimant's request for review in cases where the claimant: (1) Timely requests Appeals Council review of an ALJ's decision or dismissal issued before July 16, 2018; and (2) raises before us (either at the Appeals Council level, or previously had raised at the ALJ level) a challenge under the Appointments Clause to the authority of the ALJ who issued the decision or dismissal in the case.  84 FR 9582-02, 2019 WL 1202036 (March 15, 2019).

While Plaintiff argues, in effect, that she was not able to raise her Appointments Clause argument until SSR 19-1p went into effect last month, the regulation allowing her to expedite

---

[6]

Plaintiff cites *Bizarre v. Berryhill*, --- F.Supp.3d ----, 2019 WL 1014194, at *3 (M.D. Penn. 2019) in support of her argument that she was not required to raise the Appointments Clause claim at the administrative level.  However, Plaintiff is not entitled to a remand on this basis.  First, *Bizarre* (remanding for further hearing on the basis of the Appointments Clause argument) notes that while the plaintiff failed to raise the Appointments Clause claim at the administrative level,  "[he] *did* raise the issue at the earliest opportunity—within weeks of a Supreme Court decision potentially calling into question all ALJ appointments that do not comport with the Appointments Clause." *Id.*  In contrast here, Plaintiff did not include the constitutional argument in her motion for summary judgment, which was filed over one month after *Lucia* was issued.  She did not raise the Appointments Clause issue until almost three months after *Lucia* and after Defendant submitted her own summary judgment motion.

Second, *Fortin* (challenges to the "structural integrity of the [administrative] process" should be made first at the administrative level) is the better reasoned case; particularly because a regulation allowing constitutional claims to the heard by the Appeals Council was already on the books at the time Plaintiff was exhausting her administrative remedies. § 404.924(d)

the appeals process to challenge a "provision in the law" that she believed to be "unconstitutional" at the administrative level was in effect well before the December 28, 2016 decision by ALJ McKay. § 404.924(d). Accordingly, Plaintiff has forfeited her argument under the Appointments Clause.

In summary, as to Plaintiff's first argument, because the ALJ's rejection of the treating physician's opinion was well supported, well articulated, and well within the "zone of choice" accorded to the fact-finder at the administrative level, it should not be disturbed. *Mullen v. Bowen*, *supra*. As to her supplemental argument for remand under the Appointments Clause, she has forfeited her argument by failing to raise a "timely" claim under *Lucia.*

## <u>CONCLUSION</u>

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Docket #14] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #13] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with

specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: April 30, 2019

---

## CERTIFICATE OF SERVICE

I hereby certify on April 30, 2019 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants on April 30, 2019.

s/Carolyn M. Ciesla
Case Manager for the
Honorable R. Steven Whalen